**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ak-Chin Indian Community, | No. CV-17-00918-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Central Arizona Water Conservation District, et. al, | |
| Defendants/Counterclaimant/ Crossclaimant, | |
| United States of America, et al., | |
| Defendant/Crossclaim Defendants. | |

Crossclaim Defendants the United States, Department of the Interior ("DOI"), Bureau of Reclamation ("BOR"), and four officials of the DOI and BOR (collectively, the "United States") move to dismiss Defendant Central Arizona Water Conservation District's ("CAWCD") crossclaim against them under Rules 12(b)(1) and 12(b)(6). The motion is fully briefed and no party has requested oral argument. Because the Court lacks jurisdiction over the crossclaim, it will grant the motion under Rule 12(b)(1).

**I.      Background.**

Plaintiff Ak-Chin Indian Community sued CAWCD to establish its right to certain water. *See* Doc. 1. CAWCD moved to join the United States as a necessary party defendant under Rule 19, and the Court granted the motion. *See* Doc. 61. CAWCD then

brought a crossclaim against the United States regarding CAWCD's obligation to provide the water to Ak-Chin on behalf of the United States. *See* Doc. 65. The crossclaim seeks injunctive and declaratory relief. *Id.*

The history of the underlying dispute is summarized in the Court's prior order of July 27, 2017. *See* Doc. 61 at 1-5. Relevant facts are repeated here.

CAWCD operates and maintains the Central Arizona Project ("CAP") pursuant to an operating agreement with the United States. Doc. 65 ¶¶ 4-5. As part of a 1984 settlement with Ak-Chin, the United States committed to deliver not less than 75,000 acre-feet ("AF") per year "from the main project works of the [CAP] to the southeast corner of the Ak-Chin Indian Reservation." Ak-Chin Water Rights Settlement Act of 1984, Pub. L. No. 98-530, § 2(a), 98 Stat. 2698 (the "1984 Act"). Additionally, "[i]n any year in which sufficient surface water is available," the DOI "shall deliver such additional quantity of water as is requested by the Community not to exceed ten thousand acre-feet." *Id*. § 2(b). The 1984 Act identifies the CAP as the source of the mandatory 75,000 AF, but does not identify a source for the additional 10,000 AF. *See* Doc. 65 ¶¶ 21-22. The parties refer to this additional 10,000 AF as "§ 2(b) water," and they dispute whether and under what circumstances CAWCD is obligated to supply it.

Pursuant to a contract between the United States and Ak-Chin, Ak-Chin submits an annual schedule of its desired water deliveries to the DOI, which reviews the schedule for compliance with governing statutes and contracts and transmits it to CAWCD to arrange the water deliveries. Doc. 1 ¶¶ 24-28. CAWCD alleges that the United States transmitted a 2017 schedule that included § 2(b) water and would have forced CAWCD to supply water in excess of its obligations. Doc. 65 ¶ 30. The United States instructed CAWCD that the § 2(b) water was to come from "any unused Indian contract water." *Id.* ¶ 31.

CAWCD argues that various statutes allocate a total of 136,645 AF of CAP water for use by the Ak-Chin and San Carlos Apache tribes each year. *See* Doc. 65 ¶¶ 24-29, 51. Further, CAWCD asserts that forcing it to supply § 2(b) water from

"unused Indian contract water" violates the 2007 CAP Repayment Stipulation from prior litigation between CAWCD and the United States. Doc. 65 ¶¶ 32-33; Doc. 65-1 at 49. Because § 2(b) water is "Excess Water" under the Stipulation, CAWCD argues that it has the "exclusive right in its discretion to sell or use [it] for any authorized purpose of the CAP." *Id.*

## II. Rule 12(b)(1) Standard.

Federal courts are courts of limited jurisdiction, "possess[ing] only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Once jurisdiction is challenged in a Rule 12(b)(1) motion, it "is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Id.* (internal citations omitted). To establish jurisdiction over its crossclaim against the United States, CAWCD must demonstrate both "statutory authority granting subject matter jurisdiction" over the claims and "a waiver of sovereign immunity." *E.J. Friedman Co. v. United States*, 6 F.3d 1355, 1357 (9th Cir. 1993) (internal quotations and citation omitted). Unless CAWCD "satisfies the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress, it must be dismissed." *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007).

## III. Discussion.

CAWCD asserts two bases for a waiver of sovereign immunity: the Reclamation Reform Act of 1982 (the "RRA"), 43 U.S.C. § 390uu, and the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 702, 704, 706. Doc. 65 ¶¶ 39, 43.

### A. The RRA.

Section 390uu of the RRA reads as follow:

> Consent is given to join the United States as a necessary party defendant in any suit to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States regarding any contract executed pursuant to Federal reclamation law. The United States, when a party to any suit, shall be deemed to have waived any right to plead that it is not amenable thereto by reason of its sovereignty, and shall be subject to

> judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances.

43 U.S.C. § 390uu.

The first sentence of the statute is clear: "Consent is given to *join* the United States as a *necessary party defendant* . . . ." *Id.* (emphasis added). The United States concedes that this language authorizes its joinder as a defendant under Federal Rule of Civil Procedure 19, as occurred earlier in this case. But the United States argues that the statute does not authorize CAWCD's crossclaim against it. Doc. 76 at 4-8. The Court agrees.

In *Orff v. United States*, 545 U.S. 596 (2005), the Supreme Court confirmed that "a waiver of sovereign immunity must be strictly construed in favor of the sovereign." *Id.* at 601-02. Applying this principle, the Court held that § 399uu did not permit a direct suit against the United States:

> Section 390uu grants consent "to *join* the United States *as a necessary party defendant* in any suit to adjudicate" certain rights under a federal reclamation contract. (Emphasis added.) This language is best interpreted to grant consent to join the United States in an action between other parties – for example, two water districts, or a water district and its members – when the action requires construction of a reclamation contract and joinder of the United States is necessary. It does not permit a plaintiff to sue the United States alone.
>
> . . . The statute does not waive immunity from suits directly against the United States, as opposed to joinder of the United States as a necessary party defendant to permit a complete adjudication of rights under a reclamation contract.

*Id.* at 602, 604.

CAWCD argues that its crossclaim is not a direct suit against the United States and therefore is not covered by the holding in *Orf*. Doc. 80 at 5. Noting that it has brought the crossclaim against the United States under Rule 13(g) of the Federal Rules of Civil Procedure, CAWCD argues that "crossclaims do not require an independent basis of jurisdiction if the crossclaim satisfies the test for ancillary jurisdiction." *Id.* But the

authorities cited by CAWCD in support of this argument do not address sovereign immunity. *See Cam-Ful Indus., Inc. v. Fid. & Deposit Co. of Md.*, 922 F.2d 156, 160 (2d Cir. 1991); *Transamerica Life Ins. Co. v. Rabadi*, No. CV 15-07623-RSWL-EX, 2017 WL 3184168, at *8 (C.D. Cal. July 24, 2017). They instead apply the well-recognized doctrine of ancillary jurisdiction, which holds that federal courts may exercise jurisdiction over nonfederal claims if they arise out of the same facts as federal claims in the same lawsuit. This doctrine, which is a matter of "judicial economy, convenience and fairness to litigants," *Cam-Ful*, 922 F.2d at 160, says nothing about a waiver of sovereign immunity. And the Ninth Circuit clearly has held that the modern version of ancillary jurisdiction, found in 28 U.S.C. § 1367, does not waive sovereign immunity. *Dunn & Black v. United States*, 492 F.3d 1084, 1088 n.3 (9th Cir. 2007) ("§ 1367 merely grants federal courts supplemental jurisdiction over state claims related to certain federal claims" and "cannot operate as a waiver of the United States' sovereign immunity[.]") (citation omitted).

CAWCD also cites the second sentence of § 399uu, which provides that "[t]he United States, when a party to any suit, shall be deemed to have waived any right to plead that it is not amenable thereto by reason of its sovereignty, and shall be subject to judgments, orders, and decrees of the court having jurisdiction[.]" CAWCD seems to suggest that once the United States has been joined as a defendant under Rule 19, this sentence waives sovereign immunity with respect to crossclaims. Doc. 80 at 4. But CAWCD cites no authority for this argument and the Court finds it inconsistent with the demand that a waiver of sovereign immunity "be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996); *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011). The sentence cited by CAWCD more naturally means that the United States cannot assert sovereign immunity against the plaintiff once it has been joined as a defendant in a lawsuit. It does not clearly state that the United States has waived its sovereign immunity with respect to any and all crossclaims.

Finally, CAWCD asserts that because the United States was successfully joined as a defendant in this suit, it "cannot be a party for some purposes . . . but not for others (being subject to CAWCD's claims)." Doc. 80 at 5. In support, CAWCD cites *Terry v. Newell*, No. CV-12-02659-PHX-DGC, 2014 U.S. Dist. LEXIS 92408 (D. Ariz. July 8, 2014), but *Terry* held that certain claims *were* barred by sovereign immunity despite the fact that the United States had entered the case. *Id.* at *6-8. And although the Court addressed the meaning of "coparty" under Rule 13(g) with respect to other crossclaims, it did so only to decide whether the crossclaims fell within an exception to the exhaustion requirement in the Federal Tort Claims Act. *Id.* at *8-13. The Court did not consider § 399uu and its limited waiver of sovereign immunity.

CAWCD's crossclaim is brought directly against the United States. It is the same claim CAWCD would assert in a stand-alone lawsuit against the government, and, under Rule 13(g), is expressly brought "against" the United States. *See* Fed. R. Civ. P. 13(g). The crossclaim does not fall within § 399uu's limited waiver of sovereign immunity. *Orf*, 545 U.S. at 601-02.

### B. The APA.

Count 2 of CAWCD's crossclaim seeks relief under the APA. Doc. 65 at 10. The APA waives sovereign immunity for certain challenges to agency action if three conditions are met: (1) the claims are not for money damages, (2) an adequate remedy for the claims is not available elsewhere, and (3) the claims do not seek relief expressly or impliedly forbidden by another statute. 5 U.S.C. §§ 702, 704; *see also Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998). The United States argues that CAWCD cannot meet the third element because the APA claim is contract-based and thus is impliedly forbidden by the Tucker Act, 28 U.S.C. § 1491. Doc. 76 at 9-14. CAWCD argues that its APA claim is not based on contract, but rather is based on various statutes. Doc. 80 at 8-12. The Court agrees with the United States.[1]

---

[1] The United States also argues that CAWCD's claim is barred by the second prong, but the Court need not address this argument because the claim fails under the third.

- 6 -

The Tucker Act gives the Court of Federal Claims jurisdiction over "any claim against the United States founded . . . upon any express or implied contract with the United States[.]" 28 U.S.C. § 1491. The Tucker Act provides for an award of money damages, but "'impliedly forbids' declaratory and injunctive relief and precludes [an APA] § 702 waiver of sovereign immunity in suits on government contracts." *N. Side Lumber Co. v. Block*, 753 F.2d 1482, 1485 (9th Cir. 1985); *see Tucson Airport Auth.*, 136 F.3d at 646; *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 893 (D.C. Cir. 1985) ("It is clear from the APA's legislative history that section 702's waiver of sovereign immunity may not be used to circumvent the jurisdictional and remedial limitations of the Tucker Act."). Thus, if CAWCD's crossclaim is contractually based, sovereign immunity has not been waived by the APA and the Court lacks jurisdiction. *See Tucson Airport Auth.*, 136 F.3d at 646 (citing *N. Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994) ("*N. Star Alaska III*")).

Whether claims are contractually based for purposes of the Tucker Act "'depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate).'" *Doe v. Tenet*, 329 F.3d 1135, 1141 (9th Cir. 2003) (quoting *Megapulse v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)), *rev'd on other grounds*, *Tenet v. Doe*, 544 U.S. 1 (2005); *see N. Star Alaska III*, 14 F.3d at 37 (adopting the *Megapulse* test). "The label that is attached to a claim is not conclusive." *Doe*, 329 F.3d at 1141. The key question is whether the claim asserted "is at its essence a contract claim." *Megapulse*, 672 F.2d at 968.

Allegations in the crossclaim make clear that this dispute is at its essence a contract dispute. The Court will quote relevant allegations.

"CAWCD delivers water on behalf of the United States, in accordance with the Operating Agreement between CAWCD and the United States." Doc. 65 ¶ 5. The United States has entered into water agreements with various Arizona Indian tribes, and "the Operating Agreement obligates CAWCD, upon direction of the United States, to distribute the CAP water allocated in these agreements." *Id.* ¶ 6.

Various statutes allocate "a total of 136,645 acre-feet of CAP water . . . for use by the Ak-Chin and the San Carlos Apache Tribe." *Id.* ¶ 29. "On October 6, 2016, the United States submitted to CAWCD a 2017 CAP water order that exceeded the total of the 136,645 acre-feet identified for use by both tribes." *Id.* ¶ 30. "The United States stated that § 2(b) Water ordered for Ak-Chin was to come 'from any unused Indian contract water.'" *Id.* ¶ 31. "However, water that is not used under a CAP Indian contract or a CAP non-Indian subcontract is 'Excess Water,' as that term is defined in § 5(d)(1) of the 2007 CAP Repayment Stipulation[,]" *id.* ¶ 32, and "CAWCD has the 'exclusive right in its discretion to sell or use all Excess Water for any authorized purpose of the CAP,'" *id.* ¶ 33. Pursuant to its discretionary authority under the Stipulation, CAWCD has established procedures for distributing Excess Water, and those procedures left no Excess Water to be distributed to Ak-Chin as requested by the United States. *Id.* ¶ 35-36. As a result, CAWCD had no obligation to deliver Excess Water to Ak-Chin, *id.* ¶ 37, and the "United States directive to CAWCD requiring CAWCD to provide such water constitutes a violation the CAP Repayment Stipulation, which CAWCD seeks to enforce through this action." *Id.* ¶ 53.

To summarize, (1) the water the United States asked CAWCD to deliver to Ak-Chin in 2017 was Excess Water under various statutes and agreements; (2) CAWCD has exclusive authority to control Excess Water under the 2007 CAP Repayment Stipulation, which is a contract, *see Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law."); (3) CAWCD, in the exercise of its discretionary authority under the Stipulation, allocated Excess Water to other users and had no obligation to deliver it to Ak-Chin; and (4) the United States order that it do so was a violation of the Stipulation. This claim is based on contract. The source of CAWCD's alleged right to control Excess Water is a contract (the Stipulation), and the government's request that it deliver Excess Water to Ak-Chin violated that contract.

Language used by CAWCD in the crossclaim removes all doubt. The crossclaim alleges that "this is a suit to adjudicate the contractual rights of contracting entities and the United States regarding contracts executed pursuant to Federal reclamation law, as pled more fully below." Doc. 65 ¶ 15. It also alleges that "[t]his matter is a contractual dispute arising under contracts entered into pursuant to federal Reclamation laws[.]" *Id.* ¶ 41. For relief, the crossclaim seeks a declaration that "CAWCD is not obligated to fulfill a delivery request for § 2(b) Water out of Excess Water as defined in the CAP Repayment Stipulation." *Id.* at 11. It also seeks an injunction barring the United States from requesting that CAWCD provide Excess Water to Ak-Chin. *Id.*

The crossclaim's APA count is based on the same alleged wrongs. The APA claim makes this assertion:

> The United States' 2017 CAP water order exceeded the total of the 136,645 acre feet identified for use by both the Ak-Chin and San Carlos Apache tribes, and included water deliveries to Ak-Chin without the Secretary providing a water supply to CAWCD to fulfill the request for § 2(b) Water from sources other than those denominated as Excess Water. In these and other respects, the United States' 2017 CAP water order, and other associated actions, are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" within the meaning of the APA. 5 U.S.C. § 706(2)(A).

*Id.* ¶¶ 59-60 (citations omitted). As this language makes clear, the APA claim is based on the assertion that CAWCD has no obligation to provide Excess Water to Ak-Chin – an argument based on the 2007 CAP Repayment Stipulation, which is a contract. *Jeff D.*, 899 F.2d at 759.

In short, the rights asserted and the remedies sought in the crossclaim are rooted in contract. The crossclaim therefore seeks relief impliedly forbidden by another statute – the Tucker Act – and the APA waiver of sovereign immunity does not apply. *Tucson Airport Auth.*, 136 F.3d at 645. The crossclaim is barred by sovereign immunity.[2]

---

[2] The fact that the crossclaim seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, does not change this result. CAWCD does not argue that the Declaratory Judgment Act waives sovereign immunity, and the Act "does not confer federal

**IT IS ORDERED** that the United States' motion to dismiss CAWCD's crossclaim (Doc. 76) is **granted**.

Dated this 12th day of January, 2018.

*David G. Campbell*
David G. Campbell
United States District Judge

---

jurisdiction, but rather requires an 'independent jurisdictional basis.'" *See Countrywide Home Loans, Inc., v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 854 (9th Cir. 2011).